**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LINDA W. WEISS,<br>　　　　　Appellant, | DOCKET NUMBER<br>NY-0707-16-0149-X-1 |
| 　　　　v. | |
| DEPARTMENT OF VETERANS<br>　AFFAIRS,<br>　　　　　Agency. | DATE: April 17, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Conor D. Dirks, Esquire, James Garay Heelan, Esquire, and Debra L. Roth,
　　Esquire, Washington, D.C., for the appellant.

Kendall Scott Rocio, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**ORDER TO SHOW CAUSE**

¶1　　　In a June 15, 2022 Order, the Board affirmed the compliance initial decision to the extent it found the agency in noncompliance with its obligations to cancel the appellant's removal from her Senior Executive Service (SES) position as the Director of Albany Stratton VA Medical Center, reinstate her to that position, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

provide her with back pay, interest on the back pay, and other benefits. *Weiss v. Department of Veterans Affairs*, MSPB Docket No. NY-0707-16-0149-C-1, Order (June 15, 2022) (Order); *Weiss v. Department of Veterans Affairs*, MSPB Docket No. NY-0707-16-0149-C-1, Compliance Petition for Review (CPFR) File, Tab 5; *Weiss v. Department of Veterans Affairs*, MSPB Docket No. NY-0707-16-0149-C-1, Compliance File, Tab 11, Compliance Initial Decision (CID), Tabs 13, 15. Accordingly, the Board ordered the agency to submit to the Clerk of the Board, within 20 days from the date of the Order, satisfactory evidence of compliance, including evidence and a detailed narrative explaining how the back pay was calculated and demonstrating that the appellant had been returned to the status quo ante. Order, ¶¶ 15-16.

¶2 On July 5, 2022, the agency submitted a narrative statement and evidence of compliance to the Board showing that it had cancelled the appellant's removal. *Weiss v. Department of Veterans Affairs*, MSPB Docket No. NY-0707-16-0149-X-1, Compliance Referral File (CRF), Tab 3 at 4-13. The agency stated that it had an overriding interest to not return the appellant to the position from which she was removed but that she would be placed in the newly created position of Senior Advisor to the Veteran's Integrated Service Network Director, which carried equivalent responsibility and pay to her prior position.[2] *Id.* at 6-7. The agency stated that it had determined the appellant was entitled to a back pay award in the amount of $1,261,839 and that it would pay her this amount minus the amount she owed to the Office of Personnel Management (OPM) as reimbursement for annuity payments she received prior to her reinstatement. *Id.* at 5. The agency explained and provided exhibits purporting to show that it had

[2] The agency asserted that its overriding interest existed because the prior position was encumbered, the appellant had not operated an agency medical center since 2016 and would therefore be unfamiliar with the agency's policies and procedures for operating one, and replacing the existing Director of the Albany Stratton VA Medical Center would disrupt the medical center's operations and could have a potentially negative impact on the care provided to veterans. CRF, Tab 3 at 6.

calculated the back pay award by considering the relevant SES pay caps and using "modal ratings" for SES employees in each fiscal year of the back pay period to ascertain the appellant's appropriate salary, including performance awards and adjustments. *Id.* at 5, 15-19. The agency stated that it "anticipate[d] that submission of all pay adjustments and awards payable along with benefits documents and time-cards to [the Defense Finance and Accounting Service (DFAS)] for final processing and payout will be completed by July 8, 2022." *Id.* at 5-6.

¶3 In a July 26, 2022 response to the agency's first compliance submission, the appellant argued that the agency had failed to show it was in substantial compliance with the Board's orders. CRF, Tab 4. In particular, while she acknowledged that the agency had reinstated her to an "appropriate" SES position, she argued that the agency had not paid her any back pay or provided a reasonable schedule for making such payment, failed to calculate interest on the back pay award, did not explain how it would restore the appellant's benefits, and failed to provide sufficient evidence showing that references to her removal had been expunged from her personnel file. *Id.* at 5-8.

¶4 On October 14, 2022, the agency submitted a supplemental compliance submission stating that the High Visibility Team at DFAS had confirmed it had received all information necessary to process the appellant's back pay award and that—though it refused to provide a definite date—projected payment could be processed by November 10, 2022. CRF, Tab 5. The agency indicated that, once the payment was processed, DFAS would provide an accounting of how the back pay payment and interest were calculated. *Id.* at 4.

¶5 On January 30, 2023, the appellant requested that the Board issue a show cause order directing the agency to show cause why sanctions should not be imposed for its nearly 7 months of noncompliance, noting that she had still not received any back pay or retroactive benefits, any substantive updates about the

status of her back pay award, or any explanation regarding how DFAS intended to calculate her back pay award or interest. CRF, Tab 6.

¶6 On February 21, 2023, the agency submitted a second supplemental compliance submission stating that, on December 12, 2022, it resubmitted to DFAS all of the paperwork necessary to process the appellant's back pay award and ensured that all necessary updated timecards associated with her reinstatement were submitted. CRF, Tab 7 at 5. The agency provided copies of the documents it purportedly submitted or resubmitted to DFAS, including, among other things, the Standard Form 50 (SF-50) documenting the appellant's reassignment to the Senior Advisor position effective May 1, 2016; additional SF-50s documenting her retroactive performance awards during the back pay period; and documents from OPM reflecting that she received a total net annuity overpayment in the amount of $929,024 or $927,143.69, though the page indicating the higher amount is partially illegible. *Id.* at 9-33. The agency stated that the High Visibility Team met with DFAS on January 23, 2023, at which "DFAS represented that it is suffering an extreme backlog in payment processing [but that] it has prioritized the processing of [the appellant's] payment pursuant to the Board's Order." *Id.* at 5. The agency also provided what appeared to be an updated back pay calculation, though this document is also partially illegible. *Id.* at 7. The agency stated that its payroll employees "continue to interface with DFAS and urge them to complete processing as soon as possible, but the Agency continues to lack a mechanism to affirmatively compel DFAS to act on a concrete timeline." *Id.* at 6.

¶7 On March 13, 2023, the appellant submitted a second request that the Board issue an order to the agency to show cause why sanctions should not be imposed for its continued noncompliance. CRF, Tab 8. Therein, the appellant argued, among other things, that the agency had failed to show good cause for its unreasonable compliance delays, including why it waited over a month to engage with DFAS after it missed the November 10, 2022 anticipated deadline for

payment and another 6 weeks after resubmitting the documentation to have a meeting with the DFAS employees. *Id.* In addition, the appellant questioned why it was necessary for the agency to resubmit all the back pay paperwork to DFAS in December 2022 and whether the agency in fact previously failed to ensure that DFAS had all the required paperwork. *Id.* at 6. The appellant also challenged the agency's failure to provide any evidence or information regarding the High Visibility Team's meeting with DFAS. *Id.* at 7.

¶8 In a March 31, 2023 submission, the appellant clarified that she is still challenging the agency's compliance with the Board's orders to the extent the agency has failed to provide her back pay with interest and benefits, adequate calculations regarding her back pay award, or any information regarding how the agency intends to restore her sick and annual leave. CRF, Tab 9. Although the appellant noted that she does not see any documents in her electronic Official Personnel File referencing her removal, she argues that the agency has not demonstrated compliance with its obligation to expunge references to her removal from her personnel file as it has failed to submit any evidence on this point. *Id.* at 7. The appellant stated that she is not challenging that the agency has reinstated her to a substantially equivalent position. *Id.* at 8.

¶9 On April 3, 2023, the appellant submitted a third request that the Board issue an order to the agency to show cause why sanctions should not be imposed for its continued noncompliance. CRF, Tab 10. On April 12, 2023, the appellant submitted a fourth request for a show cause order. CRF, Tab 11.

¶10 Pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.183(c), the Board has authority to impose sanctions against the agency official responsible for noncompliance with a Board order. Such sanctions may include a ruling adverse to the agency and certification to the Comptroller General of the United States that no payment is to be made to certain agency employees found to be in noncompliance with the Board's order. 5 C.F.R. § 1201.183(e). The agency identified Ms. Rima-Ann Nelson, Assistant Undersecretary for Health for

Operations, Senior Executive Service, as the agency official charged with complying with the Board's order.  CRF, Tab 3 at 4.

¶11    As noted above, in the June 15, 2022 Order, the Board affirmed the compliance initial decision and ordered the agency to submit, within 20 days, satisfactory evidence of compliance, i.e., evidence showing that the agency has cancelled the appellant's removal, reinstated her to her former position effective January 12, 2016, and provided her with back pay, interest on back pay, and other benefits.  CPFR File, Tab 5; CID at 15.  It has been more than 9 months since issuance of our Order, but the agency has not shown that it has provided the appellant the back pay award with interest and restored benefits, nor has it provided adequate explanation or legible documents regarding its calculations of the back pay, interest, or benefits owed to her.  Although the agency asserts that DFAS is to blame for the delay, the Board has held in prior cases that the agency is liable for DFAS's delay because the agency chose to use DFAS as its paying agent.  *See Tichenor v. Department of the Army*, 84 M.S.P.R. 386, ¶ 8 (1999).  In addition, the agency has not provided documentary evidence or an affidavit showing that references to the appellant's removal have been purged from her personnel file.

¶12    Accordingly, pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.183(c), the agency and Ms. Nelson are hereby DIRECTED TO SHOW CAUSE why sanctions should not be imposed for the agency's failure to comply with the Board's June 15, 2022 Order.  The agency and Ms. Nelson shall submit their written responses within 21 days of the date of this Order.  If no response is received within this time frame, the Board will issue an order requiring the agency and Ms. Nelson to appear in person before the Board at the Headquarters of the Merit Systems Protection Board in Washington, D.C.  *See* 5 C.F.R. § 1201.183(c).

¶13    The appellant shall file any response to the agency's and Ms. Nelson's submissions within 21 days of the date of service of the submissions.  If the

appellant fails to respond, the Board may assume she is satisfied and dismiss the petition for enforcement.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.